UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
ELLEN ELIZABETH TARR                          :

                                                    :   ORDER
                 Plaintiff,         23 Civ. 9319 (JHR) (GWG)
                                                   :

   -v.-
                                                   :

CLOTHING ARTS, LTD.
                                                 :

               Defendant.       :
-------------------------------------------------------------X

**GABRIEL W. GORENSTEIN, United States Magistrate Judge**

      In light of the attached letter from Mr. Rapp, the conference scheduled for tomorrow is canceled. Plaintiff shall file any motion for a default judgment on or before February 12, 2024. Any such motion is returnable before Judge Rearden and shall comply with "Attachment A" of her Individual Practices.

      If plaintiff does not timely file a motion for a default judgment, the case may be dismissed for failure to prosecute.

      The Clerk is requested to mail a copy of this Order to:

Clothing Arts, Ltd.
c/o Adam Rapp
360 Carnegie Ave A
Kenilworth, NJ 07033

      SO ORDERED.

Dated: February 5, 2024
       New York, New York

                                                _____
                                                GABRIEL W. GORENSTEIN
                                                United States Magistrate Judge

   Adam Rapp <adamdrapp@gmail.com>

---

**Request To Cancel Conference in Tarr v. Clothing Arts, Ltd., 23cv09319**
1 message

---

**Adam Rapp** <adamdrapp@gmail.com>                                                                                          Mon, Feb 5, 2024 at 11:03 AM
To: Temporary_Pro_Se_Filing@nysd.uscourts.gov
Cc: Mars Khaimov <mars@khaimovlaw.com>

   Re: Tarr v. Clothing Arts, Ltd.; Case No. 1:23-cv-09319

   Attn: Magistrate Judge Hon. Gabriel W. Gorenstein
   Thurgood Marshall
   United States Courthouse
   40 Foley Square
   New York, NY 10007

   Dear Honorable Gorenstein,

   Thank you for the opportunity to represent myself at conference. I have seen numerous instances of requests to postpone conferences, so I can only assume there is a way to ask to cancel conferences. I apologize for the lateness of the request as we have not heard back from Mr. Khaimov in our latest settlement negotiation from last Thursday - we do not expect a response. Mr. Khaimov is cc'd on this correspondence.

   I would like to ask that we cancel the conference, if possible, to free up the court's time and not enable Mr. Khaimov to increase what will be his eventual attempt to get his / Ms Tarr's legal bills paid by my company. We have updated our website at great cost to our company using a well-respected ADA web design firm and do not plan on hiring a lawyer to add further costs to this case. Ms Tarr is welcome back to our website at her convenience.

   Instead of the conference, please allow me to add some of my notes to the record and, in the interest of time, allow Mr. Khaimov to move directly to default judgment. Mr. Khaimov agreed in our settlement negotiations that the ruling in Cruz v. Wide Open Arts, LLC is fair for Ms Tarr and is now looking to get his / Ms. Tarr's legal bills paid by my company through a settlement or through the courts. This is the clear end game of the plaintiff's attorney, as written to me in our settlement negotiations. My end game is covered in my email negotiations with Mr. Khaimov below. I will only include excerpts of my side of the correspondence. Right now, this area of the law is the wild west. Perhaps we can change that today.

   To prepare to meet with you, I read ALL of Mr. Khaimov's open case files in Pacer on January 12th - there were 243, give or take, all ADA. As I mentioned in my settlement negotiations, it is like an "ADA Groundhog Day" in the Southern and Eastern Districts of NY with respect to Mr Khaimo's cases. Going over the cases, one interesting fact quickly came to light. 0% of plaintiffs in at least Mr. Khaimov's case are contacting websites prior to suing them. Statistically speaking that is quite an outlier. These can then be classified as ADA "tester" lawsuits (see my notes on Acheson v. Laufer below), all of which are the same case with different websites and site-specific reasons why said website didn't work correctly. Interestingly, because it is basically the same case, lawyers representing defendants over and over in the small world of ADA defense are also using carbon copy responses, cutting and pasting them over and over, likely billing top dollar for them.

   These cases, very clearly, started with a lack of clarity on how to properly code the web for blind users. There may have been a real need for a user to access some website at some point in the past, but it has now metastasized to take aim at every single stop on the World Wide Web that can afford $5000-10000.

   Here are my settlement negotiations with Mr. Khaimov:

   **My Response Email #1** - Jan 19, 2024

     Jan 19, 2024, 1:17 PM    

Hi Mars,

I am happy to discuss an easy resolution via email.

For Ms Tarr, to the best of my ability, I have made the website more accessible using a well-respected ADA compliance design firm. It is our intent to make our apparel available to everyone who intends to learn about the designs and make a purchase from our site. We invite Ms Tarr back to the site at her convenience.

This has incurred a significant cost to my business, which is currently not doing well. We were just forced to reduce the hours of our workforce as demand for disposable goods has dropped significantly over the last few months with rising interest rates. This is the truth.

Considering our current financial situation, for a settlement, the attached judgment from Cruz v Wide Open Arts, LLC is acceptable to me and, apparently, the court. We can then file a voluntary dismissal similar to the one in Durantas v. Westside Apparel, Inc., and move on.

   **My Response Email #2** - Mars took 7 business days to respond, saying to pay him his billable hours on Jan 30, 2024, and here is an excerpt from my response on Feb 1, 2024. We have yet to get a response.

**Adam Rapp**      Feb 1, 2024, 1:14 PM (4 days ago)

to Mars

Hi Mars,

Thank you for getting right to the heart of the matter here, the legal fees associated or fear of said fees more precisely. Considering you are copying and pasting your way to every website on the internet with text either made or copied by you from the original source attorney or one that got it from the source, the hours associated here are minimal. I have gone over ALL of your active cases in Pacer, and I have a case where another non-represented defendant threatens you with their legal fees if they need to hire a lawyer. Fees, fees, fees!!

The decision in Wide Open Arts, LLC appears final, and no legal fees are associated with the $1500 judgment. Your biggest fear should be that the court would standardize default judgments associated with these lawsuits. That's my end game, and I'll be very clear about that to you and the judge. The judgment in Wide Open Arts can potentially end the ADA Groundhog Day in the Southern and Eastern Districts of NY. For websites to have to fix their sites and pay a fine, as no one knows this is a problem until you sue them. Interestingly, the plaintiffs in these cases appear to be actively seeking lawsuits here since you must be aware that 0% of the plaintiffs I have so far encountered have ever contacted the websites before the suit. That is a statistically significant finding, considering the volume of cases you have in Pacer. More statistically significant findings exist since you have brought into effect the law of large numbers here - look it up, it's my favorite law. Same cases over and over and over. Same patterns, same conclusions, same filings over and over again. What is the going hourly rate to copy and paste a filing??

There are a number of cases that I have come across that have bearing on this case:

**Acheson v. Laufer:**

This went to the Supreme Court, and the plaintiff magically dropped their case before the justices could rule on the standing of "tester" lawsuits where the user had no real intent to use or obtain a good or service from the site in question. Since, as mentioned above, 0% of Mr. Karimov's plaintiffs contacted the website before suing them, it stands to reason that these are all tester suits which then got site-specific data added later to manufacture an intent to purchase.

"In his opinion concurring only in the judgment, Justice Thomas found Laufer's explanation implausible and concluded that she dismissed her case as a "transparent tactic for evading review" by the Court.  He pointed out that the sanctioned attorney had never served as her counsel in the case.  He added: "[W]e have needlessly invited litigants to follow Laufer's path to manipulate our docket.  We should not resolve this case about standing based upon mootness of Laufer's own making."  Justice Thomas went on to conclude that Laufer did not have standing because the alleged violation on the website (i.e., deficient accessibility information about the hotel) caused her no harm, as she never had any interest in staying at the hotel.  He then described the dangers of ADA testers who seek to vindicate the public interest but do not have the accountability of the Executive Branch.  Without a violation of her own rights, he explained, Laufer was able to, without any discretion required of a government official, "surf the web" to ascertain compliance of hotels she had no intention to visit and obtain monetary settlements from businesses seeking to avoid substantial defense fees.  Justice Thomas concluded that these activities go far beyond the role for private plaintiffs that Congress envisioned in ADA Title III cases." [1]

**Harty v. West Point Realty:**

"The Second Circuit also made clear that the plaintiff's inability to obtain information from the website alone was not sufficient injury to confer standing.

'[e]ven assuming that Harty can allege that he was deprived of information to which he is entitled by the ADA, he must also allege downstream consequences from failing to receive the required information in order to have an Article III injury in fact. In other words, Harty must show that he has an "interest in using the information … beyond bringing [his] lawsuit.  That he has not done. Harty, therefore, has not alleged an informational injury sufficient for Article III standing.'

In short, to bring a lawsuit about a website's compliance with the ADA, a plaintiff has to show that he or she had a need for the information, goods and services offered by the website and that there were "downstream consequences" resulting from the alleged inability to use the website." [2]

Thank you for your time and again for allowing me to represent myself at conference, but it would just be best to let the court decide this one as quickly as possible. I wanted to put these notes into the record as it may help someone else down the road. This is not the way to go about fixing the accessibility issue. The real fix is to get better e-reader software that can more accurately analyze the visual world and translate it for Ms. Tarr and others. If there was as much money involved in the e-reader software business vs the ADA lawsuit business suing every stop on the World Wide Web, this would have already been developed.

I have attached the judgment in  Cruz v. Wide Open Arts, LLC. To conclude, I would like to quote from my settlement negotiations above. "What is the going rate for cutting and pasting filings these days?" Perhaps after reading my notes Ms. Tarr will magically drop this case just like Acheson v. Laufer. Thank you for your time.

Citations:
1 - https://www.adatitleiii.com/2023/12/scotus-punts-on-whether-ada-testers-have-standing-in-acheson-v-laufer/
2 - https://www.adatitleiii.com/2022/03/bringing-website-accessibility-lawsuits-in-new-york-just-got-a-little-harder-for-repeat-plaintiffs/

Safe travels,
Adam Rapp
owner/designer
ClothingArts.com

cc: Mr. Khaimov, Esq

---

📎 **123-cv-00103-HG-RML Cruz v Wide Open Arts, LLC.PDF**
49K

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
MIRIAM CRUZ
*on behalf of herself and all others similarly situated*,

                               Plaintiff,              JUDGMENT
            v.                                                     23-CV-0103 (HG)(RML)
WIDE OPEN ARTS, LLC,

                              Defendant.
-------------------------------------------------------------X

      An Order of the Honorable Hector Gonzalez, United States District Judge, having been filed on September 26, 2023, adopting the Report and Recommendation of Magistrate Judge Robert M. Levy, dated August 14, 2023, granting the Plaintiff's motion of default judgment, and awards Plaintiff $1,500 in damages, representing $1,000 in compensatory damages under the NYSHRL and NYCHRL and $500 in statutory damages under the NYSCRL; issuing an injunction pursuant to the ADA, ordering Defendant Wide Open Arts, LLC to provide access to the website in Compliance with the ADA and the WCAG 2.1; and requiring Defendant to submit to Plaintiff's Counsel within sixty (60) days; it is

      ORDERED and ADJUDGED that the Plaintiff's motion for judgment is granted; that the Plaintiff is awarded a total amount of $1,500; that an injunction is hereby issued, pursuant to the ADA; that Defendant Wide Open Arts, LLC is ordered to provide access to the Website in compliance with the ADA and the WCAG 2.1; that the Defendant is required to submit to Plaintiff's counsel within sixty (60) days; that Judgment is entered in favor of Plaintiff; and that this case is closed.

Dated: Brooklyn, New York                                Brenna B. Mahoney
       September 27, 2023                               Clerk of Court

                                                          By:   */s/Jalitza Poveda*
                                                                    Deputy Clerk